**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **TERRI CREECH,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | **7:09-CV-27 (HL)** |
| **TIFT REGIONAL HOSPITAL** | : | |
| **AUTHORITY,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## ORDER

Before the Court is Defendant Tift Regional Hospital Authority's ("Tift Regional")

Motion for Summary Judgment (Doc. 25). For the following reasons, the motion is

granted in part and denied in part. The stay regarding briefing on the pending sealed

motion for a psychiatric exam (Doc. 18) is lifted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Terri Creech ("Creech") was hired in 2003 to work at Tift Regional as a

registered nurse. (Creech Dep. at 13 and Ex. 1). Creech was assigned to work in the

operating room department. (Creech Dep. at 13). Her supervisor was Tonia Garrett

("Garrett"). (Creech Dep. at 21).

On October 31, 2005, Creech requested to take a medical leave of absence

under the Family Medical Leave Act ("FMLA")[2] because she needed hip surgery to treat

---

[1] The Court views the facts in the light most favorable to the nonmoving party.

[2] The statute is codified at 29 U.S.C. § 2601 *et seq.*

a bone disease. (SOMF[3] ¶ 8; Creech Dep. at 19). Creech expected to be able to return to work in January 2006. (Creech Dep. at 21). Tift Regional approved Creech's medical leave of absence request and informed her of her FMLA rights and obligations. (SOMF ¶ 15).

Creech's surgery was unsuccessful and she was unable to return to work as soon as she hoped. (Creech Dep. at 20). It was not until April 2006 that Creech's physician authorized her to perform light duty work. (Creech Dep. at 22; SOMF ¶ 17). Unfortunately for Creech, Garret told her that there were no desk positions available in the operating room department at that time. (Garrett Dep. at 50).

Eventually, Creech returned to work in June 2006 after Garrett found a position for her in the operating room. (Garrett Dep. at 21). Creech's FMLA leave was exhausted by the time she returned. (SOMF ¶¶ 17, 29). Creech's new position was called the Surgical Improvement Program ("SIP") coordinator; Creech did not work as an operating room nurse. (SOMF ¶ 36; Creech Dep. at 30, 55).

The SIP coordinator responsibilities involved entering operating room data, gathering medical records, pulling charts, and seeking out doctors to complete records. (Creech Dep. at 14; Eaton Dep. at 17). The SIP coordinator position was not an administrator position, i.e. a full-time employee position. Instead, it was a nursing position that did not involve active nursing. (Garrett Dep. at 16). Previously, several

---

[3] "SOMF" refers to Tift Regional's Statement of Material Facts. The cited paragraphs are those admitted by Creech in her response to Tift Regional's Statement of Material Facts.

operating room nurses performed the SIP responsibilities. (Garrett Dep. at 14). Creech was the first person to occupy the SIP coordinator position. (Creech Dep. at 34-35). The position opening was not posted for bidding; rather Garrett orally offered the job to Creech. (Creech Dep. at 34).

Creech used a cane when walking at work. (Creech Dep. at 30). Garrett testified that Creech had a mobility issue and was "still having problems," so Garrett provided Creech a cart and she arranged for people to pick up medical records from around the hospital and bring them to Creech. (Garrett Dep. at 18, 20). Creech did not have to go up stairs or use the elevator. (Garrett Dep. at 67). Creech testified that Garrett called her a liability for the hospital on several occasions and that Garrett would tell her to sit down because Garrett was "scared to death" that Creech would fall. (Creech Dep. at 60, 61, 62).

At some point, Garrett informed Creech that the SIP coordinator position was expected to be a permanent position because the amount and type of data collected was increasing. (Garrett Dep. at 17). Garrett also told Creech that she did not expect Creech to hold the SIP coordinator position permanently. (Garrett Dep. at 18). Garrett believed Creech's physicial limitations would prevent Creech from holding the job permanently. (Garrett Dep. at 19). No document was created informing Creech that she was to occupy the SIP coordinator position for a temporary period. (Garrett Dep. at 22).

As Creech's supervisor, Garrett evaluated Creech's performance as the SIP

coordinator and found that she met the expectations of the job. (Garrett Dep. 32-33).

Creech received a merit pay increase while working as the SIP coordinator. (Garrett Dep. 35; Ex. 5).

In November 2006, Garrett became aware that the SIP coordinator position's name was changing to Surgical Care Improvement Program ("SCIP") coordinator.[4] (Garrett Dep. at 36, 40; SOMF ¶ 62). The SCIP coordinator would gather data from departments outside the operating room. (Eaton Dep. at 17). Garrett also became aware that the position was transferring in the future from the operating room department to the quality management department, also called the core measure group. (Garrett Dep. at 36). Ellen Sprouse Eaton ("Eaton"), director of human resources at Tift Regional, testified that the decision to plan for a transfer occurred in the fall of 2006 (Eaton Dep. at 41-42).

In the meantime, Creech's job badge was changed to SCIP coordinator. (SOMF ¶ 63). Creech attended training for the SCIP coordinator position in North Carolina. (Creech Dep. at 64). In addition, Creech believed Rachel Davis, another nurse, had been hired to help her perform the duties of the SCIP coordinator because Garrett told her that Rachel Davis was Creech's assistant. (Creech Dep. at 59).

On February 12, 2007, Creech left work for a second FMLA medical leave of absence because she required another hip surgery. (SOMF ¶ 47). She received a

_____

[4] The "SCIP" program is not voluntary; if the hospital does not participate in "SCIP" then the hospital receives less payment from Medicare. (McStott Dep. at 18). The SIP program, however, was an elective program. (McStott Dep. at 17).

letter from Tift Regional approving her request for FMLA leave. The letter stated she was eligible to reinstatement to the same position before taking leave or to an equivalent position. (Eaton Dep. Ex. 9).

Lori Folsom ("Folsom"), personnel director of Tift Regional, approved Creech's request to take FMLA leave. (Folsom Aff. ¶ 6). Folsom later determined that she made a mistake approving Creech's FMLA leave because Creech had not worked 1,250 hours during the twelve months prior to her taking her second leave of absence. (Folsom Aff. ¶ 6).[5] Creech did not keep track of the number of hours she worked. (Creech Aff. ¶ 3). If she knew she was ineligible for FMLA leave, Creech averred that she would have delayed her elective surgery. (Creech Aff. ¶ 4).

Garrett testified that she told Creech before she left on her second medical leave of absence about the decision to move the SCIP coordinator position to the quality management department and that the position in the future would no longer be part of the operating room department. Garrett told Creech that the SCIP coordinator position had been taken away from Garrett's department. (Garrett Dep. at 45-46). Garrett also testified that she told Creech that no assistant had been hired for her and that Rachel Davis was a quality management employee who was going to perform the SCIP responsibilities once the transfer to the quality management department occurred.

---

[5]Between February 2006 and June 2006, Creech was on her first leave of absence and between June 2006 and February 2007, she worked 1,127 hours. (Folsom Aff. Ex. B).

(Garrett Dep. at 39, 45, 48). Rachel Davis' job title is clinical support. (McStott[6] Dep. at 7, 8).

Creech returned to work from her second leave of absence on April 16, 2007. (SOMF ¶ 53). Upon returning, Garrett told Creech that she no longer had the job of the SCIP coordinator. (SOMF ¶ 111). Creech testified that Garrett told her that the SCIP coordinator position transferred to quality management while she was on leave. (Creech Dep. at 59). The exact date of the transfer is not present in the record.

Garrett told Creech that she needed to find another job. (Creech Dep. at 44). She also temporarily assigned Creech to a position in pain management while Creech looked for another job (Creech Dep. at 66).

Creech began the application process for a wound care position and office manager position. (Creech Dep. at 44, 46). At some point, she was told by Judy Morey ("Morey"), the clinical recruiter at Tift Regional, that she was overqualified for those positions and that Tift Regional did not have positions available that would accommodate Creech's disability. (Creech Dep. at 44, 46). Contrary to Creech's testimony, is an e-mail from Morey stating that Creech had withdrawn her interest in the wound care position because Creech realized the position paid less than a registered nurse position. (Creech Dep. Ex. 12).

Creech also testified that she asked Eaton for help in finding a job. (Creech Dep. at 61). In response to Creech's request, Eaton told Creech that she would help Creech

---

[6] Melinda Nichols McStott is the director of the quality management department. (McStott Dep. at 6).

if possible, but that Creech had to apply for positions and that Eaton would not force someone to hire an employee. (Eaton Dep. at 62). Eaton testified that she would have called the hiring nurse manager and requested that the manager interview Creech if Creech had asked her to do so. (Eaton Dep. at 78).

Creech applied to one position in the chemotherapy department. (Creech Dep. at 67). She interviewed for the job, but ultimately was not selected. (Creech Dep. at 68). Aside from the chemotherapy position, Creech did not apply to any other available positions at Tift Regional. (Creech Dep. at 71). She admitted she could not perform the job requirements for many of the available positions, that for other positions she did not have required education, and that for some positions she did not see the job postings. (Creech Dep. at 74-75). She did ask, however, if she could continue performing the SCIP coordinator position. (Creech Dep. at 63-64).

There were case manager positions available when Creech returned from her second leave of absence that Tift Regional did not offer to her. (Tift Regional Response to Interrogatory, No. 1, Doc. 35). The case manager positions had similar duties as the SCIP coordinator. (Tift Regional Response to Interrogatory, No. 1, Doc. 35). Creech did not apply for them. (Creech Dep. at 71).

On October 31, 2007, Garrett told Creech that she had thirty days left to find another job or she would be terminated. (SOMF ¶ 138). Creech did not find another position at Tift Regional, so her employment was terminated after the end of November 2007. (SOMF ¶ 139; Garrett Dep. Ex. 12). Garrett recommended to Folsom and

Morey that Creech's employment be terminated.  (SOMF ¶ 139; Garrett Dep. Ex. 12).

Nine nondisabled, non-FMLA leave taking employees were terminated from their employment at Tift Regional between 2006 and 2008 when their jobs were eliminated. (SOMF ¶ 164).

Creech filed an unverified intake questionnaire with the Equal Employment Opportunity Commission ("EEOC") on July 2, 2007. (Creech Dep. Ex. 27).[7]  On December 3, 2008, the EEOC dismissed her charge of discrimination because it was "unable to conclude that the information obtained establishes violations of the statutes."  (Creech Compl. Ex. A).  On March 2, 2009, Creech filed a complaint in this Court against Tift Regional alleging that: (1) she was discriminated against on the basis of her disability when Tift Regional terminated her employment  and refused to provide her reasonable accommodations in violation of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12101, *et seq*, ; and (2) Tift Regional violated the FMLA when it refused to restore Creech to her position of SCIP coordinator or to place Creech in an equivalent position.   Creech asks to be reinstated to her former position or an equivalent one, or alternatively she asks for front pay and benefits.  She also asks for back pay, lost wages, compensatory and punitive damages, prejudgment interest on

---

[7]  The Court has doubts as to whether Creech timely filed a charge of discrimination with the EEOC because the Court cannot locate a charge of discrimination in the record and because the unverified intake questionnaire does not constitute a charge.  Nevertheless, because Tift Regional has not objected to the timeliness of the charge, it has waived that objection.  See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (finding that the employer waived any objection as to the timeliness of the EEOC charge when employer did not raise the objection).

a lost compensation and profits award, and attorneys' fees and costs.

On December 22, 2009, Tift Regional filed this motion for summary judgment. It argues it is entitled to judgment as a matter of law as to all issues raised in Creech's complaint.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In ruling on a defendant's motion for summary judgment, the court takes the facts in the light most favorable to the plaintiff.  Stanley v. City of Dalton, 219 F.3d 1280, 1287 (11th Cir. 2000).  The court may not, however, make credibility determinations or weigh the evidence.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

The initial burden lies on the movant to demonstrate that the nonmovant lacks evidence to support an essential element of its claim.  Lowe v. Aldridge, 958 F.2d 1565, 1569 (11th Cir. 1992).  The burden then shifts to the nonmovant, who must come forward with some evidence that would allow a jury to find in his favor, even if the parties dispute that evidence.  Id.  If the evidence that the nonmovant presents, however, is "not significantly probative" or "merely colorable," then summary judgment may be granted.  Liberty Lobby, 477 U.S. at  249.

## B.    ADA Claim

The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . ." 42 U.S.C. § 12112(a).  Creech claims that Tift Regional failed to place her back in the position of the SCIP coordinator because of her disability and then failed to accommodate her disability on multiple occasions when she returned from her second leave of absence.  These claims fall within the ADA.  Each is addressed in turn.

### 1.    Failure To Place Creech Back in the SCIP Coordinator Position

Plaintiffs pursuing ADA claims based on circumstantial evidence are required to prove discrimination under the traditional Title VII burden-shifting framework. Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000).  Here, there is no direct evidence of discrimination against Creech.  She must therefore prove discrimination through the burden-shifting framework.

The framework first requires the plaintiff to establish a prima facie case of discrimination.  EEOC v. Joe's Stone Crabs, Inc., 196 F.3d 1265, 1272 (11th Cir. 2002).  Then the defendant must articulate a legitimate non-discriminatory reason for the challenged action.  Id. The Plaintiff must show that the Defendant's reason was a pretext for discrimination. Id. at 1272-73.

To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected

to unlawful discrimination because of her disability. Earl, 207 F.3d at 1365.

Tift Regional does not dispute that Creech satisfies the first two prongs of an ADA prima facie case. It disputes the third prong and argues that there is no evidence showing that Creech's job, the SCIP coordinator position, was eliminated because of her disability; rather, the record shows that the position was eliminated because it transferred from the operating room department to the quality management department and then was folded into a clinical support position after Creech began her second medical leave of absence.

In response, Creech identifies the adverse, discriminatory employment action she suffered as Tift Regional's failure to place her back in the SCIP coordinator position after Creech returned from her second medical leave of absence. Creech argues that there is record evidence showing that she suffered this adverse employment action because of her disability. The evidence she points to is: (1) the decision to transfer the position to quality management in fall 2006, which was before Creech took her second medical leave of absence; (2) her assignment to work as the SCIP coordinator position after Rachel Davis was hired and up until she left for her second leave of absence; (3) Garrett calling her a liability for the hospital.

Creech has not created a genuine issue of fact as to whether Tift Regional decided to not give Creech the SCIP coordinator position back because of her disability. Creech is correct in that it is undisputed that the decision to transfer the SCIP coordinator position to the quality management department occurred in the fall

of 2006. However, it is also undisputed that the transfer went into effect while Creech was gone and that once the transfer went into effect, the SCIP coordinator position was subsumed into the clinical services position. Thus, Tift Regional could not discriminate against Creech by failing to place her back in the SCIP coordinator position because the SCIP coordinator position went out of existence while she was on her leave of absence. There is nothing showing that the decision itself to transfer the position was influenced by Creech's disability.

Further, even accepting as true, as the Court must on summary judgment, that Garrett called Creech a liability and told Creech that Rachel Davis was Creech's assistant, those facts do not create a genuine issue of material fact as to the third prong of a prima facie case because there is no evidence showing that Garrett had authority to influence the timing of the transfer to the quality management department. Thus, these statements do not show that Tift Regional's decision to follow through with the transfer of SCIP coordinator position and to subsume the position into the clinical services position was because of Creech's disability.

Since Creech has failed to create a genuine issue of fact as to the third prong of a prima facie ADA case, summary judgment must be granted to Tift Regional on Creech's claim that Tift Regional violated the ADA by failing to place her back in the SCIP coordinator position.

### 2.     Failure to Accommodate Claims

Creech argues that Tift Regional failed to accommodate her disability on multiple

occasions after she was informed that the SCIP coordinator position had been eliminated. The claims raised in her responsive brief are that Tift Regional: (1) did not allow her to continue to perform the SCIP coordinator position in the quality management department; (2) did not place Creech in a vacant position within the hospital; (3) made no effort to assist Creech in obtaining positions for which she applied, including the oncology position; and (4) Morey told her that Tift Regional did not have jobs available that would accommodate her disability.

The ADA prohibits an employer from not making "reasonable accommodations" for a qualified employee's known disability. 42 U.S.C. § 12112(b)(5)(A). Summary judgment must be granted to Tift Regional on Creech's failure to accommodate claims because Tift Regional had no duty to continue to employ Creech after her job as the SCIP coordinator position had been eliminated due to internal restructuring. Creech, in effect, argues that Tift Regional should have treated her differently from the other nine employees who were terminated when their jobs were eliminated by keeping her on as an employee, by reassigning her, by creating a position for her, or by assisting her with finding another job because she was disabled. That argument misconstrues the protections afforded to the disabled by the ADA. The ADA does not provide that disabled employees are entitled to more than fair treatment, or more job security or assistance in finding a job than nondisabled employees. It is a statute designed to eliminate discrimination against persons with disabilities. American Ass'n of People with Disabilities v. Harris, 605 F.3d 1124, 1133 (11th Cir. 2010).

13

Creech, like any other potential employee, had a duty to apply for available positions. She was not entitled to more assistance from Tift Regional employees in securing a job than nondisabled applicants. There is no evidence that Garrett and Eaton treated Creech differently from other applicants by not finding her a job. Thus, their failure to find her a position alone is not evidence of disability discrimination.

Further, the evidence establishes that the reasons Creech failed to apply for available positions at Tift Regional was because she believed that she was incapable of performing the jobs, did not have the required education for some positions, and she did not see certain job openings. Taking as true that Morey told Creech that there were no jobs available that would accommodate her disability and that Creech was overqualified for one position, Creech's own failure to apply to positions is a nondiscriminatory reason for Tift Regional's failure to hire her.[8] See Rickert v. Midland Lutheran College, 2009 WL 2840528, at *15 (D. Neb. 2009) (finding that plaintiff's claim that she was discouraged from applying to a position did not survive summary judgment when the evidence showed that plaintiff did not apply for the position because of a separate, nondiscriminatory reason). Creech has shown there is not a genuine issue of fact as to whether Morey discouraged her from applying to jobs because Creech admitted that she did not apply to jobs for nondiscriminatory reasons.

In their briefs, the parties raise Tift Regional's decision to place Creech in the SIP coordinator position after returning from her first leave of absence. Unlike Creech's

---

[8]The burden shifting analysis applies to ADA failure to hire claims. Bennett v. Dominguez, 196 Fed. App'x 785, 791 (11th Cir. 2006).

argument, the Court does not read Tift Regional's position to be that it should receive "extra credit" for having provided Creech the SIP coordinator position when the ADA did not require it. The Court rather understands Tift Regional's position to be that the Court should not penalize Tift Regional for failing to continue to employ Creech even though after she returned from her first leave of absence Tift Regional provided her the SIP coordinator position.

An employer's failure to continue to make accommodations above what the ADA requires does not violate the ADA. Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1528 (11th Cir. 1997). Here, whether Tift Regional went beyond what the ADA requires when it first hired her for the SIP coordinator position is irrelevant to the question of whether the SCIP coordinator position was not given to Creech because of Creech's disability when she returned from her second leave of absence. Having determined that Creech's disability had no effect on when the SCIP coordinator position was transferred and eliminated, summary judgment must be granted to Tift Regional on Creech's ADA failure to accommodate claims because Creech was not entitled to accommodations after her position at Tift Regional was eliminated.

### C.    Creech's FMLA Claim

The FMLA entitles an eligible employee to take twelve workweeks of leave during any 12-month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C. § 2612(a)(1)(D). To preserve these rights to take leave, the FMLA creates two types

of claims: interference claims, in which an employee alleges that his employer denied him a benefit guaranteed under the Act, 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. 29 U.S.C. § 2615(a)(2).

In her complaint Creech alleges that upon returning to work in April 2007 Tift Regional was obligated to restore her to the SCIP coordinator position or that it was obligated to give her an equivalent position. The Court construes this allegation as stating a claim for interference on the basis that Tift Regional denied her the benefit of reinstatement.

To state an interference claim, a plaintiff must demonstrate that she was entitled to a benefit under the FMLA and the employer denied him the benefit. Strickland v. Water Works & Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206-07 (11th Cir. 2006). The employer's motives are irrelevant. Id. at 1208.

Tift Regional argues that Creech was not entitled to a benefit (reinstatement) under the FMLA when she took her second leave of absence because she was not an "eligible employee" as defined by the FMLA. It alternatively argues that it did not deny Creech reinstatement because her position was eliminated irrespective of her taking FMLA leave. Creech argues that she was an eligible employee and even if the Court finds that she was not, Tift Regional should be estopped from asserting her ineligibility. She finally contends that there is a dispute of fact as to whether her position was eliminated irrespective of her FMLA leave and that regardless, there was an equivalent

position available at Tift Regional to which should have been assigned.

### 1.    Whether Creech Was an Eligible Employee

To obtain relief under the FMLA, a plaintiff must establish that he is an "eligible employee."  29 U.S.C. § 2611.  To be an "eligible employee" an employee must be employed for at least 12 months by the employer and must have worked at least 1,250 hours during the previous 12-month period.  29 U.S.C. § 2611(2)(A).  It is a two prong requirement. As to the second prong, whether the employee has worked the requisite required number of hours is determined by the hours worked "during the 12-month period immediately preceding the commencement of the leave."  29 C.F.R. § 825.110(a)(2).  Stated another way, "the determination of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months . . . must be made as of the date the FMLA leave is to start."  29 C.F.R. § 825.127(d).

Tift Regional has presented evidence that Creech only worked 1,127 hours during the twelve month period immediately prior to her taking her second leave of absence in February 2007; therefore, it asserts that she did not work the required number of hours to render her an eligible employee for FMLA leave when she took her second leave of absence.  Creech does not dispute that the record shows the number of hours she worked during the 12 months prior to taking leave totals 1,127 hours.  She argues, however, that she had worked the requisite 12 months.

Creech misunderstands the requirements for FMLA eligibility.  Not only must she have worked a total of 12 months for Tift Regional prior to taking leave, she also must

have worked 1,250 hours during the 12 months immediately prior to taking leave. She has presented no evidence rebutting Tift Regional's evidence that she did not work the requisite number of hours during the 12 months immediately prior to taking her second leave of absence.

Accordingly, the Court finds that Creech has not created a genuine issue of fact as to whether she was an eligible employee for FMLA leave. The Court next addresses Creech's argument that Tift Regional should be estopped from asserting she was ineligible for FMLA leave.

### 2.    Equitable Estoppel

Tift Regional admits that it mistakenly approved Creech's request to take a second FMLA leave of absence beginning in February 2007. It sent Creech a letter approving her for FMLA leave. Creech relied on the approval letter when she took leave.

Tift Regional argues Creech does not satisfy the requirements for equitable estoppel. It separately argues that even if the Court finds Creech meets the requirements for equitable estoppel, the Eleventh Circuit has never applied equitable estoppel to FMLA eligibility claims and that district courts within the Eleventh Circuit have consistently decided not to apply the doctrine.

The Court first considers whether Creech has created disputes of fact as to whether she satisfies the equitable estoppel requirements. It then addresses the question of whether equitable estoppel should be used in FMLA eligibility cases.

### i.      Equitable Estoppel Requirements

To satisfy the equitable estoppel requirements, a plaintiff must show: (1) that there was a misrepresentation of material fact; (2) the party to be estopped was aware of the true facts; (3) there was an intention on the part of the party to be estopped that the misrepresentation would be acted upon or that another party would rely on the misrepresentation; (4) the party asserting estoppel was unaware of the true facts and should not have been aware of the true facts; and (5) the party asserting estoppel reasonably and detrimentally relied on the misrepresentation. Martin v. Brevard County Pub. Sch., 543 F.3d 1261, 1266 n. 2 (11th Cir. 2005).

Tift Regional contends that it did not make a misrepresentation of material fact to Creech because it merely made a mistake approving Creech's FMLA leave. It further argues that Creech should have known from the hospital's handbook she was required to work 1,250 hours before she was eligible for FMLA leave. It believes that Creech could not reasonably rely on the letter approving her FMLA leave because she should have known she did not meet the 1,250 hour requirement since she worked only seven months before returning from her first leave of absence and she had taken many vacation days.

In contrast, Creech asserts that Tift Regional should have known that Creech was not qualified for FMLA leave because it maintained records reflecting the number of hours Creech worked. Creech did not keep track of the number of hours she worked each week. (Creech Aff. ¶ 3).

Creech also explains that if Tift Regional had denied her request to take FMLA leave, then she would not have taken medical leave beginning in February 2007. (Creech Aff. ¶ 4). Her surgery was elective and could have been delayed. (Creech Aff. ¶ 4). Because Creech relied on the approval, she argues Tift Regional cannot now claim that she was not entitled to FMLA leave.

Regarding the first and second equitable estoppel factors, the Fifth Circuit has held that "an employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an 'eligible employee' and entitled to leave under FMLA" may be subject to estoppel if the employee reasonably relies on the misrepresentation to her detriment and the employer had reason to believe that the employee will rely on the misrepresentation. Minard v. ITC Deltacom Commc'ns, Inc., 447 F.3d 352, 359 (5th Cir. 2006). The court noted that the Restatement of Torts does not require any intent to deceive by the party to be estopped. Id. at 359 (citing RESTATEMENT (SECOND) OF TORTS at § 894(1). Estoppel is appropriate even where "the one making the representation believes that his statement is true." RESTATEMENT (SECOND) OF TORTS at § 894(1), cmt. b.

Applying the Fifth Circuit's view, the Court finds that an unintentional statement constitutes a misrepresentation for purposes of satisfying the first and second requirements of equitable estoppel if the party making the statement had information that would enable it to make a true statement. Here, there is no dispute of fact that Tift Regional made a mistake when it approved Creech's request for FMLA leave and that

it had the information before it–the hours log–that would have enabled it to make a true representation. Accordingly, at the summary judgment stage, Creech has shown Tift Regional made a misrepresentation of material fact despite being aware of the true facts.

Tift Regional disputes the fourth and fifth requirements of equitable estoppel. As to the fourth requirement, it argues that Creech should have known the true facts: that she was required to work 1,250 hours before reaching FMLA eligibility. As to the fifth requirement, it argues that Creech unreasonably relied on the misrepresentation because she should have known that she did not work 1,250 hours.

Tift Regional is mistaken in what true facts Creech should have known. The true facts are the number of hours Creech actually worked. Creech has presented evidence that only Tift Regional maintained a log of the number of hours Creech worked and that she did not keep track of the hours she worked. Tift Regional has not disputed the reasonableness of Creech's failure to keep her own hours log. Thus, there is a dispute of fact as to whether Creech should have known the actual number of hours she worked. Further, to be eligible for FMLA leave, an employee has to work approximately 31 weeks.[9] Creech was short just 3 weeks of work prior to becoming eligible for FMLA leave. Given the proximity between the date that she took leave and the date that she was eligible for FMLA leave, the Court finds that there is evidence creating a dispute of fact as to whether her reliance on Tift Regional's letter approving her FMLA leave

_____

[9] The Court assumes that an employee works 40 hours each week.

was reasonable.

Finally, a dispute of material fact exists as to whether Creech detrimentally relied on Tift Regional's FMLA approval letter. A question of fact as to detrimental reliance exists if the employee presents evidence that she would not have taken leave if she knew she was ineligible for FMLA leave. Minard, 447 F.3d at 359; see also Dobrowski v. Jay Dee Contractors, Inc., 571 F.3d 551, 557 (6th Cir. 2009) (finding no detrimental reliance when there was no evidence that employee would have rescheduled his surgery if he had known he was not FMLA eligible).

Here, Creech has averred that she would have delayed her elective surgery until she was eligible for FMLA leave. As she was short only 123 hours (three weeks of work), Creech stated that it would not have been a problem to delay her surgery until she was eligible for FMLA leave. Thus, there is a genuine dispute of fact as to whether she relied on Tift Regional's misrepresentation to her detriment.

For summary judgment purposes, Creech has created a genuine dispute of fact as to whether she satisfies the requirements of equitable estoppel. The Court therefore proceeds to determine whether the doctrine should be applied to prevent an employer from disputing the employee's FMLA eligibility.

### ii.     Whether the Doctrine Applies to FMLA Eligibility Cases

The Eleventh Circuit has never decided whether equitable estoppel may apply to prevent an employer from disputing an employee's eligibility for FMLA leave. District courts within the Eleventh Circuit, however, have consistently declined to apply the

doctrine to the FMLA employee eligibility requirements. Kuczynski v. Lyra Management, Inc., 2009 WL 2488295, at * 3 (S.D. Fla. Aug. 13, 2009) ("Plaintiff, therefore, satisfies the elements of equitable estoppel . . . the undersigned has already decided that absent a directive from the Eleventh Circuit, this Court declines to apply the doctrine.) (citation omitted); Peery v. CSB Behavioral Health Sys., 2008 WL 4425364, at * 13 (S.D. Ga. Sept. 30, 2008) ("Based on this persuasive authority, this Court sees no reason to apply the doctrine here.); Hegre v. Alberto-Culver USA, Inc., 2007 WL 1481896, at *1 n. 1 (S.D. Ga. May 15, 2007) ("Initially, it should be noted that it is doubtful that the doctrine of equitable estoppel may be applied in FMLA cases); see Moore v. Sears Roebuck & Co., 2007 WL 1950405, at * 9 (N.D. Fla. July 2, 2007) (declining to apply equitable estoppel in a case where plaintiff argued that defendant is equitably estopped from challenging her eligibility under the FMLA).

Other circuit courts, however, have held that an employer may be equitably estopped from challenging an employee's eligibility for FMLA leave. Dobrowski, 571 F.3d at 554 ("Our circuit recognizes that in certain circumstances equitable estoppel applies to employer statements regarding an employee's FMLA eligibility, preventing the employer from raising non-eligibility as a defense."); Minard, 447 F.3d at 359 (explaining conditions for application of equitable estoppel in preventing an employer from asserting an employee's ineligibility for FMLA coverage); Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 494 (8th Cir. 2002) (no abuse of discretion in the district court's determination that employer should be estopped from contesting employee's

eligibility to assert a FMLA claim); Plumley v. S. Container, Inc., 303 F.3d 364, 374 (1st Cir. 2002) (reviewing requirements of equitable estoppel and finding that employee did not meet them); Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 727 (2d Cir. 2001) (finding that equitable estoppel doctrine applied to prevent employer from arguing employee did not meet requirements of FMLA if employer failed to inform employee of FMLA eligibility requirements); Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579, 582 (7th Cir.2000) (finding that FMLA did not exclude application of estoppel doctrine and recognizing that in an appropriate case equitable estoppel would apply).

This Court sees no reason to find that equitable estoppel does not apply to FMLA eligibility disputes merely because the Eleventh Circuit has not decided whether the doctrine applies. It is persuasive to the Court that circuit courts outside the Eleventh Circuit have applied the doctrine. The Fifth Circuit's reasoning in Minard and the Sixth Circuit's explanation in Dobrowski make sense. The courts noted that the eligibility requirements for FMLA relief are not jurisdictional in nature and therefore equitable estoppel principles may apply to estop an employer from contesting an employee's eligibility. Minard, 447 F.3d at 356, 358; Dobrowski, 571 F.3d at 554 n. 1 and n. 2 (explaining that equitable estoppel is a judicial doctrine that bars the assertion of a claim or defense, which is different from a statutory interpretation that provides for estoppel-like liability).

Moreover, each district court case cited above except Kuczynski found that even if the doctrine were to apply, the facts of the particular case did not satisfy the equitable

estoppel elements.  In contrast, the facts of this case, viewed in the light most favorable to Creech, squarely fit the requirements of equitable estoppel.

Accordingly, the Court will apply the equitable estoppel doctrine to Creech's FMLA claim.  For purposes of summary judgment, Tift Regional is estopped from arguing that she was ineligible to take FMLA leave.  The Court therefore reaches the merits of her interference claim.

### 3.    Whether Tift Regional Interfered with Creech's FMLA Rights

Employees who take FMLA leave are entitled to the position they had before taking leave or an equivalent position.  29 U.S.C. § 2615(a)(1).  Nonetheless, an employee does not have a right to reinstatement if she would not be entitled to the position "had [she] not taken the leave." 29 U.S.C. § 2614(a)(3)(B).  In other words, an employee's right to reinstatment is subject to an employer's "opportunity to demonstrate it would have discharged the employee even had she not been on FMLA leave." O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1354 (11th Cir.2000).

Tift Regional disputes whether it interfered with Creech's FMLA rights.  According to Tift Regional, the record evidence shows that Creech's job as the SCIP coordinator was eliminated regardless of her use of FMLA leave and it contends that there were no equivalent positions available.  In response, Creech argues that there is a dispute of fact as to whether the SCIP coordinator position was eliminated because of her use of FMLA leave and alternatively, that there is a dispute of fact as to whether

there were equivalent positions available that Tift Regional should have offered her before terminating her employment.

As the Court has already explained, the unrebutted evidence establishes that Tift Regional would have eliminated Creech's SCIP coordinator position regardless of her disability. Likewise, the unrebutted evidence shows that the SCIP coordinator position would have been eliminated regardless of Creech taking FMLA leave. The decision to transfer the SCIP coordinator responsibilities to the quality management department was made prior to Creech taking leave. The responsibilities were then transferred to the quality management department and subsumed into the clinical support position while Creech was on leave. Since the decision to transfer was made before Creech requested to take FMLA leave for a second surgery, the transfer would have occurred regardless of whether Creech took FMLA leave.

On the other hand, there is a dispute of fact as to whether equivalent positions were available to Creech and thus, whether the failure to Tift Regional to provide her one of the available positions violated her FMLA right to reinstatement.[10] Creech has pointed to case manager positions that were available at Tift Regional after she returned from FMLA leave in April 2007, but were not offered to her. Tift Regional

---

[10] The FMLA reinstatement question is different from the questions related to Creech's failure to accommodate ADA claims. Her ADA failure to accommodate claims raised questions of whether Creech was entitled to remain an employee at Tift Regional even though her position was eliminated for reasons unrelated to her disability. The FMLA reinstatement question asks, however, whether she was entitled to remain an employee at Tift Regional in spite of taking FMLA leave.

admits that the case manager positions had similar responsibilities as the SCIP coordinator position. (See Res. Br. P. 14, citing Tift Regional's interrogatory response No. 1, Doc. 35). Tift Regional does not, however, admit that the case manager positions were equivalent to the SCIP coordinator position. It argues that the case manager and SCIP coordinator positions were not equivalent because the case manager positions were not limited to maintaining surgical statistics.

An "equivalent position" must have the same or substantially similar duties and responsibilities, skill requirements, and authority as an employee's existing position. 29 C.F.R. § 825.215(a) (1997). Determining whether the job offered is equivalent is generally a fact question for the jury. Parker v. Hanhemann Univ. Hos., 234 F. Supp. 2d 478, 489 (D.N.J. 2002) (citing Watkins v. J & S Oil Co., 164 F.3d 55, 60 (1st Cir. 1998)).

The SCIP coordinator and case manager positions had similar duties, but Tift Regional points to no support for its assertion that the case manager positions were not limited to surgical statistics. The Court has no information regarding the job responsibilities, skill requirements, and authority of the case manager positions. After reviewing the record, the Court is left with the unrebutted evidence that the case manager and SCIP coordinator positions were similar. In the absence of additional evidence, the fact that the positions were admittedly similar creates a dispute of fact as to whether the case manager positions constitute equivalents of the SCIP coordinator position. Thus, a reasonable jury could conclude that Tift Regional's failure

to offer her a case manager position with her right to take FMLA leave.  Summary judgment is not warranted on Creech's FMLA interference claim.

## III.    CONCLUSION

Tift Regional's motion for summary judgment (Doc. 25) is granted in part and denied in part.  The stay regarding the pending motion for a psychiatric exam (Doc. 18) is lifted.  The parties may conduct discovery until September 17, 2010, for the limited purpose of completing Creech's deposition on the issue of damages.  Tift Regional may file a reply brief on the motion for a psychiatric exam on or before August 31, 2010. The Court does not anticipate further briefing on the motion.

**SO ORDERED**, this the 18th day of August, 2010.


*s/  Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

lmc